UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN FIELD,<br><br>          Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>          Defendants. | No. 2:15–cv–00241–TLN–DB<br><br>**ORDER** |

      This matter is before the Court on Plaintiff Karen Field's ("Plaintiff") Motion for Discharge of Stakeholder (ECF No. 142) and Motion for Attorneys' Fees and Costs (ECF No. 149). Defendants United States and California Franchise Tax Board (collectively, "Defendants") opposed Plaintiff's motions. (ECF Nos. 157, 158.) Plaintiff replied. (ECF Nos. 167, 168.) For the reasons set forth below, the Court hereby GRANTS Plaintiff's Motion for Discharge (ECF No. 142) and defers ruling on Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 149).

///
///
///
///
///
///

## I. FACTUAL BACKGROUND

Plaintiff, a professional fiduciary licensed by the State of California, is the court-appointed Trustee of the DeShon Revocable Trust (the "Trust"). (ECF No. 56 at 3.) The settlor of the Trust was Henry DeShon, who is now deceased. (ECF No. 56 at 3.) During his life, Mr. DeShon embezzled funds from certain claimants in the instant action and placed the embezzled funds in the same account from which he drew funds to purchase and maintain life insurance policies on his life. (ECF No. 143 at 2.) Mr. DeShon named the Trust as the beneficiary of the life insurance policies, and the Trust therefore received the insurance proceeds following Mr. DeShon's death. (ECF No. 56 at 3.)

Plaintiff alleges that several victims and creditors filed claims for the funds in probate court and that at least part of the funds may be owed to Defendants as unreported tax on the embezzlement income. (ECF No. 56 at 3–4.) According to Plaintiff, the total amount of claims exceeds the amount of the funds. (ECF No. 56 at 3–4.) As of July 26, 2017, Plaintiff deposited $380,965.70 of the funds with the Court such that she is no longer in possession of any Trust assets. (ECF No. 108 at 4–5.)

## II. STANDARD OF LAW

Interpleader is a procedure authorized by 28 U.S.C. § 1335 ("§ 1335") and Federal Rule of Civil Procedure 22 ("Rule 22"). When a person holding funds or property (the stakeholder) encounters other parties who are making conflicting possessory claims for those funds or property, she may join the parties as defendants and require them to litigate who is entitled to the funds or property. *Michelman v. Lincoln Nat. life Ins. Co.*, 685 F.3d 887, 893 (9th Cir. 2012); *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995); *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 507 (9th Cir. 1978). The main purpose of interpleader actions is to protect the stakeholder from the expense of multiple lawsuits and from having to contend with inconsistent or multiple determinations of liability. *Texas v. Florida,* 306 U.S. 398, 406–07 (1939); *In re Republic of Philippines*, 309 F.3d 1143, 1153 (9th Cir. 2002); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000).

There are some general requirements for interpleader. Interpleader requires that the plaintiff-stakeholder have control over a particular fund or property. *Mock v. Collins*, No. EDCV 04–395–VAP SGLX, 2004 WL 3619122, at *2 (C.D. Cal. Sept. 1, 2004). Further, there must be multiple, adverse claims made to that same property or fund. *Libby, McNeill, & Libby*, 592 F.2d at 507. Finally, the plaintiff-stakeholder must have a reasonable fear of multiple liability. *Michelman*, 685 F.3d at 894. The stakeholder is not required to determine the validity of the competing claims or wait to be actually sued by one or more of the claimants. *Tashire*, 386 U.S. at 532–33. However, the stakeholder must have "a good faith belief that there are or may be colorable competing claims to the stake," based on "a real and reasonable fear of exposure to double liability or the vexation of conflicting claims." *Michelman*, 685 F.3d at 894. The Supreme Court has emphasized that interpleader is a remedial device that should be applied liberally. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967).

If a plaintiff-stakeholder has satisfied the interpleader requirements listed above, the court may discharge the stakeholder from liability and dismiss her from the action. 28 U.S.C. § 2361; *United States v. High Tech. Prod., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). The plaintiff-stakeholder may also request injunctive relief in which the court enjoins pending or future proceedings against it by defendants in any other court. 28 U.S.C. § 2361; *United States v. Major Oil Corp.*, 583 F.2d 1152, 1157 (10th Cir. 1978). Further, under a court's inherent equitable powers in interpleader actions, courts have discretion to award attorneys' fees and costs to a disinterested stakeholder where the stakeholder has acted in good faith. *Abe x Corp. v. Ski's Enter., Inc.*, 748 F.2d 513, 516 (9th Cir. 1984); *Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194–95 (9th Cir. 1962).

### III. ANALYSIS

In her motion for discharge, Plaintiff requests that the Court (1) find that interpleader is proper pursuant to § 1335 and Rule 22 and (2) discharge the Trustee from further liability pursuant to 28 U.S.C. § 2361 and dismiss her from the action. (ECF No. 142.) Plaintiff also filed a separate motion for attorneys' fees and costs related to the interpleader. (ECF No. 149.) The

3

Court will address Plaintiff's motions in turn.

### A. Motion for Interpleader and Discharge

Plaintiff argues that interpleader is justified in this case because it meets all the requirements of § 1335 and Rule 22. (ECF No. 143 at 8.) Notably, Defendants do not argue that interpleader is improper, likely because the facts in this case present a classic example of interpleader. The parties do not dispute that Plaintiff, as Trustee, had control of the now-deposited funds at issue. (ECF No. 143 at 8); see *Mock*, 2004 WL 3619122, at \*2. Further, the parties do not dispute that there are multiple, adverse claims to those funds. *See Libby*, 592 F.2d at 507. Indeed, besides Defendants, there are several other victims and creditors who claim a right to the funds. (ECF No. 143 at 9.) Finally, based on the several competing claims for the funds, Plaintiff clearly has a reasonable fear of multiple liability. (ECF No. 143 at 9); *see Michelman*, 685 F.3d at 894. Thus, the Court finds that all the elements of interpleader are met.

Plaintiff next argues that she is entitled to discharge of liability. (ECF No. 143 at 11.) In addition to ordering the Plaintiff's discharge and dismissing her from the action, Plaintiff also asks the Court to enjoin claimants from instituting any proceeding against her concerning the funds or liability involved in the interpleader pursuant to 28 U.S.C. § 2361. (ECF No. 143 at 11.) In opposition, Defendants argue the Court should not enter Plaintiff's discharge because (1) such relief is statutorily barred, (2) Plaintiff may be independently liable to the United States or other claimants, and (3) Plaintiff has made a number of misrepresentations to this Court and the probate court. (ECF No. 157 at 7.) The Court will discuss Defendants' arguments in turn.

#### i. *Statutorily barred*

Defendants argue that enjoining future claims relating to the funds or liability involved in this interpleader action would violate 26 U.S.C. § 7421(a) ("§ 7421(a)") because such injunctive relief would impermissibly restrain the assessment or collection of tax.[1] (ECF No. 157 at 7.)

---

[1] Defendant California Franchise Tax Board ("FTB") adds that 28 U.S.C. § 1341 ("§ 1341"), which curtails federal court interference with state revenue collection procedures, also bars Plaintiff's discharge. (ECF No. 158 at 2.) However, the Court notes that FTB's rationale for invoking § 1341 seems to mirror the United States' rationale for invoking § 7421(a). In other words, Defendants rely on separate statutes to make essentially the same argument: the Court should deny Plaintiff's discharge because it will restrain tax collection. As such, the Court rejects FTB's argument under § 1341 for the same reason it rejects the United States' argument under § 7421(a), as discussed below.

4

More specifically, Defendants assert that the Court should not shield Plaintiff from liability because Plaintiff chose not to file amended tax returns for 2006 and 2007 despite determining that Mr. DeShon had unreported income for those years. (ECF No. 157 at 8.)

Section 7421(a) states in relevant part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Defendants fail to cite any authority to support their contention that § 7421(a) bars Plaintiff's discharge and injunctive relief. In contrast, Plaintiff cites a persuasive case wherein a district court rejected that exact contention, *First Interstate Bank of Oregon, N.A. v. U.S. By & Through I.R.S.*, 891 F. Supp. 543, 548 (D. Or. 1995) (hereinafter, "*FIOR*").

In *FIOR*, as in the instant case, the United States argued that § 7421(a) prevented the plaintiff-interpleader's discharge. *Id.* at 547–548. The *FIOR* court criticized the United States' "misplaced" argument and emphasized that the "interpleader action is not a suit designed to obstruct the United States in its ability to assess or collect taxes; nor will this action hinder the United States in its efforts to assess or collect taxes." *Id.* at 548. The court also pointed out that "judicial resolution of the competing claims will *facilitate* the ability of the United States to collect any taxes which might be owing." *Id.* (emphasis added). Finally, the *FIOR* court reasoned, "The fact that the United States would be barred from pursuing a future claim against [plaintiff-interpleader] regarding the disputed funds is of no consequence because the United States has alleged neither that [plaintiff-interpleader] has any outstanding tax liability nor that [plaintiff-interpleader] has any interest in the disputed funds."

The Court agrees with the analysis in *FIOR*. Here, Defendants do not argue that Plaintiff is liable for Mr. DeShon's unpaid taxes nor do they argue that Plaintiff has any interest in the Trust funds. Defendants argue only that Plaintiff erred by not filing amended tax returns for 2006 and 2007, yet Defendants fail to explain how Plaintiff's alleged error imparts tax liability or hinders future tax collection. Therefore, the Court is not persuaded that granting Plaintiff's desired relief would violate § 7421(a). Moreover, the Court notes that Plaintiff's desired relief is statutory and inherently appropriate in an interpleader action. *See* 28 U.S.C. § 2361. For these

reasons, the Court rejects Defendants' argument that it is statutorily-barred from discharging Plaintiff and granting injunctive relief.

### ii. *Independently liable*

Defendants next argue that the Court should deny Plaintiff's request for discharge because Plaintiff may be liable to certain claimants for breach of fiduciary duties under the California Probate Code. (ECF No. 157 at 8.) Specifically, Defendants argue that Plaintiff could be liable for breach of fiduciary duties under California Probate Code §§ 16403(b) ("§ 16403(b)") and 16420(a) ("§ 16420(a)"). But Defendants are creditors and thus cannot reasonably argue that they have standing to bring an action under § 16403(b), which imparts standing only to beneficiaries, or § 16420(a), which imparts standing only to beneficiaries or co-trustees. *See* Cal. Probate Code §§ 16403(b), 16420(a). To the extent some claimants are beneficiaries, those claimants did not file an opposition or raise this argument. Further, Defendants' assertions again lack support. Defendants fail to cite any authority for the proposition that the Court should deny discharge if there is a mere possibility Plaintiff may be liable for some harm related to the disputed funds. Accordingly, the Court rejects Defendants' argument that Plaintiff's hypothetical liability necessarily forecloses her desired relief.

### iii. *Misrepresentations*

Finally, Defendants argue that Plaintiff exhibited a marked lack of candor in this proceeding and in the probate court. (ECF No. 157 at 9.) Defendants contend that Plaintiff represented to the probate court that the Trust owed between $237,114 and $276,633 in federal income taxes for 2006, 2007, and 2008, and that the returns were already prepared. (ECF No. 157 at 9.) Despite this representation, Defendants argue Plaintiff filed for 2008 only, reporting $98,929 and $32,204 in tax due to the IRS and FTB, respectively. (ECF No. 157 at 9.) Defendants also assert that Plaintiff represented to the probate court that the first trustee was in dispute with the IRS, but Defendants argue the IRS was not in the position to demand payment of additional taxes due until after Plaintiff filed the amended return for 2008 reporting additional tax due. (ECF No. 157 at 9.) Defendants seem to cite these alleged misrepresentations to show that Plaintiff manufactured the threat of large tax liabilities in order to obtain $150,000 of the Trust

6

funds to litigate the disputes.  (ECF No. 157 at 9–10.)

Defendants also point to two alleged misrepresentations Plaintiff made to this Court. (ECF No. 157 at 10.)  First, Defendants argue Plaintiff incorrectly asserted that the probate court allowed the claims of the victims.  (ECF No. 157 at 10.)  Second, Defendants argue that Plaintiff incorrectly asserted that the IRS did not appear in probate court despite having notice of the proceeding.  (ECF No. 157 at 10.)  Defendants argue that this pattern of misrepresentations provides strong indicia of bad faith such that the Court should not grant Plaintiff's motion for discharge.  (ECF No. 157 at 10.)

"Judgment discharging the stakeholder in an interpleader action may, of course, be delayed or denied if there are serious charges that the stakeholder commenced the action in bad faith."  *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 96 (2d Cir. 1983).  Here, the Court is not persuaded that Defendants' claims rise to the level of "serious charges" that Plaintiff commenced the interpleader in bad faith.  Even assuming Plaintiff made each alleged misrepresentation, those tangential statements do not undercut Plaintiff's well-supported reasons for commencing the instant action.  As already discussed, it is undisputed that there are sufficient adverse claims to the Trust funds such that interpleader was proper.  Further, Defendants yet again fail to provide evidence or case law that otherwise may have convinced this Court that Plaintiff's actions constitute bad faith.

For the foregoing reasons, the Court GRANTS Plaintiff's motion for discharge.  The Court also orders that the claimants are permanently enjoined from instituting any suit at law or equity, or action or proceeding of any kind whatsoever against Plaintiff with respect to the disputed funds.  Finally, the Court DISMISSES Plaintiff from the case with prejudice.

### B. Motion for Attorney's Fees and Costs

Plaintiff next seeks $109,774.55 in attorneys' fees, $2,655.77 in litigation costs, and $1,450 in trustee's fees, for a total of $113,880.32 from the interpleaded fund of $380,965.70. (ECF No. 167 at 9.)  Defendants filed a "limited" opposition to Plaintiff's fee motion.[2]  (ECF No.

---

[2] Defendants assert their opposition is "limited" because the deposited interpleader funds are sufficient to pay their current claims.  (ECF No. 157 at 1–2; ECF No. 158 at 2.)

157 at 10–14.) Although Defendants broadly argue that Plaintiff's requested fees are excessive and unreasonable, they do not challenge specific charges or hourly rates. (ECF No. 157 at 11.)

"The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court." *Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise,* 234 F.3d 415, 426 *opinion amended on denial of reh'g,* 255 F.3d 661 (9th Cir. 2000). The Ninth Circuit has found that attorneys' fee awards should include fees that are incurred in filing the action and pursuing the plaintiff-stakeholder's release from liability. *Id.* "Compensable expenses include . . . preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from liability and dismissing it from the action." *Id.* at 426–27. Fee awards may *not* cover costs included in litigating the merits of the adverse claimants' position. *Id.* at 426. As such, "attorneys' fee awards to the 'disinterested' plaintiff are typically modest." *Id.* at 427. Indeed, "there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id.*

Here, the current filings are inadequate for the Court to determine whether the requested attorneys' fees meet the parameters set forth by the Ninth Circuit. *Id.* at 426–27. In their brief and supporting declarations, Plaintiff's counsel generally describes the work they completed. (ECF No. 154 at 7–12.) Counsel charged various hourly rates, which changed yearly and ranged from $265 per hour to $595 per hour for the seven attorneys involved. (ECF No. 150 at 4–5.) Counsel also states that attorneys spent a cumulative total of 495.2 hours on the matter. (ECF No. 150 at 4; ECF No. 169 at 8.) But rather than clearly summarize the charges in a manner that would allow the Court to apply the Lodestar formula, counsel attaches approximately 150 pages of jumbled, vague, and sometimes duplicative invoices. (ECF No. 150 at 16–149; ECF No. 169 at 5–8.) The Court simply does not have the time or resources to scour through Plaintiff's invoices and divine an estimate of the fees to which Plaintiff's attorneys are reasonably entitled.

Because Plaintiff can only recover certain "compensable expenses" pursuant to *Tise*, the Court orders counsel to submit a declaration identifying the total amount and description of charges related to each task or category of tasks that Plaintiff believes to be compensable. *See*,

*e.g.*, *Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1169–70 (N.D. Cal. 2012). Further, because the attorneys — understandably — seek various hourly rates, Plaintiff should also identify the total amount of compensable expenses allotted to each attorney. The Court thus defers ruling on Plaintiff's motion for attorneys' fees and costs pending Plaintiff's submission.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Discharge (ECF No. 142) is hereby GRANTED. The Court defers ruling on Plaintiff's Motion for Attorney's Fees and Costs (ECF No. 149) and orders as follows:

1. Plaintiff is discharged of all liability with respect to the disputed funds that are the subject of this action;
2. Defendants-in-interpleader, their agents, attorneys, or assigns are permanently enjoined from instituting any suit at law or equity, or action or proceeding of any kind whatsoever against Plaintiff with respect to the disputed funds;
3. Plaintiff is DISMISSED from this action with prejudice as to all claims relating to the disputed funds;
4. Plaintiff's counsel is ordered to a submit a declaration that clearly identifies the total amount and description of charges related to each compensable task as well as the total amount of compensable expenses allotted to each attorney. The declaration shall be submitted no later than fourteen (14) days from the date of this Order. Defendants may respond no later than seven (7) days from the date the declaration is electronically filed; and
5. The remaining parties are ordered to file an updated Joint Status Report within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated: December 18, 2019

Troy L. Nunley
United States District Judge