UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN FIELD, TRUSTEE OF THE DESHON REVOCABLE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | No. 2:15-cv-00241-TLN-DB<br><br><br>**ORDER** |

This matter is before the Court on Defendant United States of America's ("United States") Motion to Determine Priority and to Disburse Interpleader Funds. (ECF No. 190.) Defendants William Lopez ("Lopez"), Manyun Natsu ("Natsu"), Gary W. Rogers ("Rogers"), and Capital One Financial Corporation ("Capital One") filed oppositions. (ECF Nos. 191, 193, 194.) The United States filed a reply. (ECF No. 195.) Also before the Court is Defendant California Franchise Tax Board's ("CFTB") Motion for Summary Judgment and Payment of Interpleader Funds. (ECF No. 196.) Lopez, Natsu, Rogers, and Capital One filed oppositions. (ECF Nos. 197, 198, 199.) CFTB filed a reply. (ECF No. 201.) For the reasons set forth below, the Court GRANTS both motions.

///

///

1

1        **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2        Plaintiff Karen Field ("Plaintiff"), as trustee of the DeShon Revocable Trust ("Trust"),

3   filed this interpleader suit in January 2015 and the operative Second Amended Complaint in

4   September 2015.  (ECF Nos. 1, 56.)  Plaintiff alleges the settlor of the Trust was Henry DeShon,

5   who died in March 2009.  (ECF No. 56 at 3.)  Plaintiff further alleges that DeShon embezzled

6   funds from certain claimants in the instant action and did not report the embezzled income on his

7   federal and California income tax returns for 2006, 2007, and 2008.  (*Id.* at 4.)

8        The funds at issue in this interpleader action were received by the Trust as the benefits

9   from DeShon's life insurance policies.  (*Id.* at 5.)  On April 29, 2016, Plaintiff deposited

10  $304,287.32 of funds from the Trust with the Clerk of Court.  (ECF No. 190 at 5.)  Plaintiff

11  deposited an additional $76,678.38 of funds from the Trust on August 14, 2017.  (*Id.*)  On April

12  8, 2020, the Court discharged Plaintiff from the case and awarded her $36,892.77 in attorneys'

13  fees and costs from the interpleaded funds.  (ECF No. 188.)

14       There are several competing claims to the remaining funds held by the Court.  However,

15  only the United States and CFTB have moved to receive payment from the fund.  (*See* ECF Nos.

16  190, 196.)  In its motion to disburse the interpleader funds, the United States seeks $145,033.35 in

17  unpaid federal taxes assessed against DeShon for 2008.  (ECF No. 190 at 6.)  In its motion for

18  summary judgment, CFTB seeks $49,441.94 in unpaid state taxes for 2008.  (ECF No. 196-1 at

19  2.)  Both parties note that these amounts do not account for interest that continues to accrue.

20  (ECF No. 190 at 6; ECF No. 196-1 at 2.)

21       **II.     STANDARD OF LAW**

22       An interpleader action "provides a process by which a party may join all other claimants

23  as adverse parties when their claims are such that the stakeholder may be exposed to multiple

24  liability."  *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) (internal quotations

25  omitted).  The purpose of an interpleader action is "to decide the validity and priority of existing

26  claims" to property at issue.  *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1369 (9th Cir. 1997).

27       Interpleader actions involve a two-step process.  "The first is determining whether the

28  requirements of interpleader have been met."  *Lincoln Nat'l Life Ins. Co. v. Ridgway*, 293 F.

1    Supp. 3d 1254, 1260 (W.D. Wash. 2018).[1]  "The second step is to 'adjudicat[e] the adverse

2    claims of the defendant claimants.'"  *Id.*  This second step may be resolved by summary judgment

3    if there is no genuine issue of material fact.  *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).

4    "Each claimant has the burden of establishing his or her right to the fund or property by a

5    preponderance of the evidence."  *Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs.,*

6    *LLC*, 748 F. Supp. 2d 1145, 1164 (C.D. Cal. 2010), *aff'd*, 491 F. App'x 793 (9th Cir. 2012).

7         The Court may grant summary judgment when the record reveals no genuine issue of

8    material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v.*

9    *Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party to establish both the

10   nonexistence of a genuine issue of fact and that it is entitled to judgment.  *Id.*  The burden then

11   shifts to the non-moving party to "make a showing sufficient to establish the existence of an

12   element essential to that party's case, and on which that party will bear the burden of proof at

13   trial."  *Id.* at 323–24.  The non-moving party cannot rest on the allegations and denials in the

14   pleadings but must set forth specific facts establishing an issue for trial.[2]  *Anderson v. Liberty*

15   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).

16        **III.    ANALYSIS**

17             A.    United States' Motion

18        The United States argues it is entitled to be paid first from the interpleaded funds pursuant

19   to the federal priority statute, 31 U.S.C § 3713(a).  (ECF No. 190 at 6.)  As of May 15, 2020, the

20   balance owed to the United States for DeShon's federal tax liability and interest was $145,033.35.

21   (*Id.* at 4.)  The United States notes that the interest continues to accrue and is compounded daily

22   until paid in full.  (*Id.*)  The United States provides a declaration from Internal Revenue Service

23   ("IRS") Advisor Mark Elliot to support its contentions.  (ECF No. 190-1.)

24        In opposition, Lopez and Natsu argue the United States fails to address the applicability of

25   _____

26   [1]     The Court already determined that the requirements of interpleader have been met in its
     December 20, 2019 Order.  (ECF No. 174 at 4.)

27   [2]     Although the United States captions its pleading as a "Motion to Disburse Funds," the
     Court construes it as a motion for summary judgment.  *See, e.g.*, *Gilead Scis., Inc. v. Bio-Genetic*
28   *Ventures, Inc.*, No. C06-1416JLR, 2007 WL 2495896, at *1 (W.D. Wash. Aug. 29, 2007).

1    Tax Division Directive No. 137 ("Directive No. 137"), which states "[w]hen both the tax claim

2    and the claim of the investor or victim [of embezzlement] arise from the same transaction and the

3    investor or victim can trace its property to the fund at issue, the Tax Division will recognize the

4    priority of the claim of the investor or victim."  (ECF No. 193 at 5.)  Lopez and Natsu filed

5    declarations asserting they have valid claims based on DeShon's embezzlement of their

6    investments (in the total amount of $295,101.34) and they have traced their investments to the

7    funds at issue.  (*Id.* at 6.)  Similarly, Rogers filed an opposition and declaration stating that he is

8    entitled to $100,000 based on an investment his now-deceased mother made with DeShon.  (ECF

9    No. 191 at 3.)  Lastly, Capital One filed an opposition joining in the foregoing oppositions.  (ECF

10    No. 194.)  Capital One does not submit any evidence nor does it assert it is entitled to a specific

11    amount or priority over the United States.  (*Id.* at 2–3.)  Instead, Capital One merely echoes

12    arguments made by Lopez and Natsu and asks the Court to order a status conference to discuss a

13    process for resolving how to disburse the remaining funds.  (*Id.*)

14        The federal priority statutes states in relevant part, "[a] claim of the United States

15    Government shall be paid first when . . . the estate of a deceased debtor, in the custody of the

16    executor or administrator, is not enough to pay all debts of the debtor."  31 U.S.C §

17    3713(a)(1)(B).  Because "the purpose of § 3713 is to 'secure adequate revenue to satisfy burdens

18    on the federal treasury, the provision is given a liberal interpretation in order to effectuate its

19    purpose.'"  *FTC v. Crittenden*, 823 F. Supp. 705, 707 (C.D. Cal. 1993) (quoting *United States v.*

20    *Cole*, 733 F.2d 651, 654 (9th Cir. 1984)).

21        None of the parties opposing the United States' motion challenge the United States'

22    evidence or dispute that the United States has a valid tax assessment.  Moreover, none of the

23    parties opposing the United States' motion have persuaded the Court that they have priority over

24    the United States' claim.  Lopez, Natsu, and Rogers assert they lost substantial amounts of money

25    they invested with DeShon.  (ECF Nos. 191-1, 193-1, 193-2.)  Rogers's declaration does not

26    assert DeShon embezzled his investment.  (ECF No. 191-1.)  The only evidence of embezzlement

27    provided by Lopez and Natsu are their declarations stating: "From communication with the

28    attorney representing DeShon's estate, [they] learned that funds investors had invested [with

4

1    DeShon] . . . were used for his daily living expenses.  He apparently had not invested the funds in

2    the stock market as stated. . . ."  (ECF No. 193-1 at 3; ECF No. 193-2 at 3.)  The parties also

3    repeatedly argue the Court previously found DeShon embezzled funds.  (ECF No. 193 at 2.)

4    However, the Court's prior order was merely reciting allegations from the Complaint, not making

5    a finding based on evidence.  (ECF No. 174 at 2; ECF No. 182 at 2.)

6         Even assuming there was sufficient evidence to raise a triable issue that Lopez, Natsu, and

7    Rogers have valid claims based on DeShon's purported embezzlement, the only authority those

8    parties cite to suggest their claims have priority over the federal tax claim is Directive No. 137.

9    (ECF No. 193 at 5.)  However, Directive No. 137 appears to be an internal agency policy, not a

10   source of enforceable legal rights.  *See Wadsworth v. Talmage*, No. 3:16-CV-2082-SI, 2017 WL

11   3271722, at *9 n.9 (D. Or. Aug. 1, 2017) (stating that Directive No. 137 "is only an internal

12   agency policy regarding enforcement priorities . . . it does not provide the Trust with any

13   enforceable legal rights").  There is no indication that Directive No. 137 overrides the United

14   States' statutory priority under 31 U.S.C § 3713(a).

15        Because there is no genuine dispute that the United States has a valid tax claim against

16   DeShon, and no party has shown that they have priority over the United States' claim, the Court

17   GRANTS the United States' motion.

18                    B.      CFTB's Motion

19        CFTB argues it has a second priority claim to the interpleader funds, only after the claim

20   of the United States.  (ECF No. 196-1 at 2.)  As of July 24, 2020, the balance owed to CFTB for

21   DeShon's state tax liability and interest was $49,441.94.  (*Id.*)  CFTB notes that interest continues

22   to accrue at a per diem rate of $6.75.  (*Id.*)  CFTB provides a declaration from CFTB Operations

23   Specialist AnaMarija Antic-Jezildzic to support its contentions.  (ECF No. 196-3.)

24        In opposition, Lopez and Natsu argue there are disputed facts as to the other claimants'

25   claims.[3]  (ECF No. 197 at 5.)  More specifically, they argue for the first time that their claims are

26   supported by a constructive trust or equitable lien that preceded the CFTB's claim.  (*Id.* at 5–7.)

27
     ─────────────────────
28   [3]    Lopez and Natsu did not file new evidence in opposition to CFTB's motion and instead
     reference their declarations filed in opposition to the United States' motion.  (ECF No. 197 at 1.)

                                                  5

1    Rogers filed a notice of joinder in Lopez and Natsu's opposition.  (ECF No. 198.)  Lastly, as with

2    its opposition to the United States' motion, Capital One filed an opposition joining in the

3    foregoing oppositions and asking for a status conference to resolve the competing claims.  (ECF

4    No. 199 at 2–3.)

5          Under California law, unpaid tax liabilities become perfected tax liens against the

6    taxpayer's property at the time the liability becomes due and payable.  Cal. Rev. & Tax Code §

7    19221(a); Cal. Gov't Code § 7170(a).  CTFB provides evidence that it assessed the applicable

8    income taxes on January 20, 2015 (8 days before this action was filed), and the CFTB thus has an

9    enforceable lien as of that date.  None of the parties opposing CFTB's motion challenge CFTB's

10   evidence or dispute that the CFTB has a valid tax lien.  Moreover, none of the parties opposing

11   CFTB's motion have persuaded the Court that they have priority over the CFTB's claim.  As

12   such, CFTB appears to have priority over the remaining claims.  *See Texaco, Inc*, 118 F.3d at

13   1370 ("[A] district court must normally determine the priority of claims in an interpleader action

14   as they existed at the time the action was initiated.").

15         The parties opposing CFTB's motion rely on the alternative theory that their claims are

16   subject to a constructive trust or equitable lien that "occurred in 2007 and 2008 when DeShon

17   committed his embezzlement and fraud."  (ECF No. 197 at 6.)  No party raised this argument in

18   opposition to the United States' motion, an answer, or any other filing.  Moreover, the oppositions

19   contain minimal legal analysis about constructive trusts and equitable liens.  The parties vaguely

20   contend the CFTB does not address the facts associated with an equitable lien or constructive

21   trust imposed on the embezzled funds.  (*Id.* at 5–6.)  However, there is no indication that either a

22   constructive trust or equitable lien has been imposed in this case, or that doing so would be proper

23   based on the existing record.

24         Because there is no genuine dispute that the CFTB has a valid tax claim against DeShon,

25   and no party has shown that they have priority over the CFTB'S claim, the Court GRANTS the

26   CFTB's motion.

27   ///

28   ///

6

**IV.     CONCLUSION**

For the foregoing reasons, the Court GRANTS the United States' Motion to Determine Priority and to Disburse Interpleader Funds (ECF No. 190) and CFTB's Motion for Summary Judgment and Payment of Interpleader Funds (ECF No. 196).  The United States and CFTB are ORDERED to file updated documentation regarding the current amount due, including any accrued interest, no later than seven (7) days of the electronic filing date of this Order.  The Court will disburse the updated amounts from the interpleader funds thereafter.

Further, the remaining claimants are ORDERED to file properly noticed motions not later than sixty (60) days of the electronic filing date of this Order, including evidence showing they are entitled to disbursement from the remaining funds.  These claimants are strongly encouraged to meet and confer regarding a joint motion to disburse the remaining funds.  Thereafter, the Court will disburse the remaining funds accordingly and close the case.

IT IS SO ORDERED.

DATED:  March 8, 2022

Troy L. Nunley
United States District Judge

7